IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**JIMMY C. HECKMAN,**
   **Plaintiff,**

vs.                Case No. 3:07cv268/MCR/MD

**WENDELL HALL, et al.,**
   **Defendants.**

---

### ORDER and
### REPORT AND RECOMMENDATION

  This cause is before the court upon plaintiff filing a civil rights complaint (doc. 1) pursuant to 42 U.S.C. §1983, and a motion to proceed *in forma pauperis* (doc. 2). For the limited purpose of dismissal of this complaint, leave to proceed *in forma pauperis* will be granted.

  Because plaintiff is proceeding *in forma pauperis*, the court is required to dismiss the case at any time if it determines that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Upon review of the complaint, the undersigned concludes that this case should be dismissed under § 1915(e)(2)(B)(ii) and (iii).

  Plaintiff is a pre-trial detainee currently incarcerated at the Santa Rosa County Detention Center. He names five defendants in this action: Wendell Hall, Sheriff of Santa Rosa County; the Santa Rosa County Detention Center ("Jail"); the Santa Rosa County Sheriff's Office ("SRC Sheriff's Office"); David A. Dunkerley, state public defender; and Santa Rosa County State Attorney's Office. Plaintiff's complaint concerns the procedures used to extradite him from Mississippi to Florida, his trial

counsel's failure to assist him in challenging his extradition by way of habeas corpus, his lack of access to a law library while confined at the Jail, and Jail officials' failure to provide mental health treatment for the stress plaintiff suffered as a result of his extradition. As relief, he seeks "what relief is afforded by law, . . . the parties involved held financially responsible for the violations which have been listed in this complaint." (Doc. 1, p. 7).

The allegations of plaintiff's verified complaint are as follows. Plaintiff asserts that on December 30, 2005 he was arrested in Hinds County, Mississippi on an out of state fugitive warrant issued by the Circuit Court of Santa Rosa County, Florida. On January 3, 2006 the SRC Sheriff's Office put a hold on plaintiff. That same date plaintiff was taken before a Hinds County judge to sign an extradition waiver, which he refused to do. The Hinds County court set an extradition/fugitive bond in the amount of $75,000.00. The following day, the Hinds County court notified the SRC Sheriff's Office that in the absence of a waiver, they would need to obtain a Governor's warrant and appear at an extradition hearing. SRC Sheriff's Office officials did not pursue the matter.

On October 16, 2006, while in the custody of the Mississippi Department of Corrections, plaintiff was presented with another extradition waiver, which he signed. Plaintiff complains that "Florida didn't come get me during any time frame;" that he was released from the Mississippi Department of Corrections' custody on December 4, 2006; and that the SRC Sheriff's Office and Santa Rosa County State Attorney's Office then re-filed the fugitive warrant. (Doc. 1, p. 5). On December 8, 2006 plaintiff turned himself in to "Rankin County Probation to the U.S. Marshall's [sic]." Plaintiff signed an extradition waiver on December 12, 2006, and on December 20, 2006 he was picked up by the "U.S. prisoner transport." (*Id.*). Plaintiff arrived at the Santa Rosa County Jail on December 21, 2006. He asserts that at the time he was extradited, he was "in the plea process" with regard to felony charges in Hinds County, Mississippi, and that he "should not have been transported out of state." (*Id.*, p. 6, Continuation page 2).

Based on the foregoing, plaintiff claims his due process and speedy trial rights were violated "when Florida didn't follow the guidelines to complete extradition;" when Florida "sent another extradition waiver on October 16, 2006 knowing I had already denied signing the original waiver on January 3, 2006;" when Florida "didn't come get me on the October 16, 2006 waiver I signed in the allotted time;" and when Florida effected his transfer "in the middle of proceedings in Hinds County." (*Id.*, p. 7).

David Dunkerley of the public defender's office was appointed to represent plaintiff in the Florida criminal prosecution. Plaintiff complains that he sent letters to Dunkerley in February, April, and May of 2007, but received no response. (*Id.*, p. 6). Therefore, in May of 2007 plaintiff filed a *pro se* petition for writ of habeas corpus in the Florida Supreme Court relating to his "ongoing extradition problems." (*Id.*, p. 6 Continuation page 1). On May 28, 2007 plaintiff requested legal copies of documents he intended to file in the habeas case to meet a June 6, 2007 deadline. Jail officer Tammy Cooper returned plaintiff's documents, advising him that no more legal work could be copied. However, copies were eventually made for him on May 29, 2007. On June 4, 2007 plaintiff sent a request to Mr. Dunkerley for assistance with the habeas proceeding, but Dunkerley did not respond. Jail officers Rena Smith and S. Barlow denied plaintiff's requests for access to the law library on the grounds that plaintiff was represented by counsel and could obtain the requested materials from him. Although plaintiff informed officials that he was proceeding *pro se* in the habeas case, he was again advised to obtain any legal materials through his attorney. Plaintiff complains that on June 5, 2007 he requested that more legal copies be made, but his request was denied. Plaintiff does not indicate the current status of the state habeas proceeding.

Based on the foregoing, plaintiff claims that David Dunkerley "has not done his job as my counsel of record" in violation of plaintiff's Sixth Amendment "protections by law against ineffective counsel." He further claims that he was denied his right to access the courts with regard to his state habeas petition when Jail officials denied him access to the law library and refused to provide legal

copies. (*Id.*, p. 7, Continuation page). Lastly, plaintiff claims his Eighth Amendment rights were violated when he was not seen by a psychiatrist on account of his emotional distress resulting from "the whole process." (*Id.*).

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

> 1. whether the conduct complained of was committed by a person acting under color of state law; and
>
> 2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

Neither the Santa Rosa County Sheriff's Office nor the Santa Rosa County Detention Center is a proper party to this proceeding. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing FED.R.CIV.P. 17(b)). In Florida, there is no such legal entity as the "Santa Rosa County Sheriff's Office." Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers, including a sheriff. FLA. CONST. ART. VIII, §§ 1 (a) and (d). However, no provision is made constitutionally or statutorily for a "Sheriff's Office" as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Office given authority to be sued in such a name. *See Bethel v. Escambia County Sheriff's Office*, 2006 WL 839184 (N.D. Fla. 2006) (dismissing Escambia County Sheriff's Office from § 1983 suit on grounds that it is not a suable entity); *Hobbs v. Holmes County Sheriff's Dep't*, No. 5:04cv82/RH, doc. 10, p. 3 (N.D. Fla. 2004) (concluding that the Holmes County Sheriff's Department is not a suable entity); *Turner v. Bieluch*, No. 9:03cv81059, doc. 12 (S.D. Fla. 2004) (concluding that Palm Beach County Sheriff's Office lacks capacity to be sued); *Erickson v. Hunter*, 1996 WL 427769 at *1 (M.D. Fla. 1996) (dismissing claims against Collier County Sheriff's Office on grounds that it lacks

the capacity to be sued); *see also Post v. City of Ft. Lauderdale*, 750 F.Supp. 1131 (S.D. Fla. 1990) (holding that individual departments or divisions which are an integral part of city government could not be held liable).

The same applies to a county jail. Florida law does not recognize a jail facility as a legal entity separate and apart from the county or sheriff. *See Eddy v. City of Miami*, 715 F.Supp. 1553, 1556 (S.D. Fla. 1999) (indicating that department which is integral part of local government's policing function is not an entity subject to suit under § 1983); *Shelby v. City of Atlanta*, 578 F.Supp. 1368, 1370 (N.D. Ga. 1984) (same); *Avant v. Rice*, 1992 WL 359633 at *6 (M.D. Fla. 1992) (unpublished opinion) (holding that county jail is not an actionable legal entity because it does not enjoy a separate legal existence independent of the county or the sheriff's office); *Mayes v. Elrod*, 470 F.Supp. 1188, 1192 (N.D. Ill. 1979) (same). For claims against a sheriff's department or a county jail, the appropriate defendant is the Sheriff in his official capacity. *See Mitchell v. Untreiner*, 421 F.Supp. 886, 888 (N.D. Fla. 1976) (referring to Sheriff of Escambia County, Florida as "the Chief Jailer of the Escambia County Jail"); *Avant v. Rice, supra*; *Hobbs v. Holmes County Sheriff's Dep't, supra*, ("For claims against the [Holmes County] Sheriff's Department, the appropriate defendant is the Sheriff, Dennis Lee, in his official capacity."). Inasmuch as Mr. Hall is already named as a defendant and clearly is being sued in his official capacity, plaintiff's claims against the "Santa Rosa County Sheriff's Office" and the "Santa Rosa County Detention Center" are duplicative and superfluous, and should be dismissed. *See Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999); *Washington v. Bauer*, 2005 WL 2114156 at n.1 (11th Cir. Sept. 2, 2005) (unpublished opinion); *see, e.g, Hobbs v. Holmes County Sheriff's Dep't, supra*, (dismissing claims against Holmes County Sheriff's Department where plaintiff sued Sheriff Dennis Lee in his official capacity); *Erickson v. Hunter, supra*, (finding it "redundant and unnecessary" to name the Collier County Sheriff's Office as a defendant where plaintiff named the Sheriff of Collier County in his official capacity).

Furthermore, plaintiff cannot maintain a § 1983 action against his public defender Mr. Dunkerley. "[T]he under-color-of-state-law element of § 1983 excludes

from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (citation and quotation marks omitted). "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325, 102 s.Ct. 445, 453, 70 L.Ed.2d 509 (1981). Plaintiff's ineffective assistance of counsel claims against defense attorney Dunkerley are based on allegations that during plaintiff's state criminal prosecution, Dunkerley failed to communicate with plaintiff and failed to file a habeas corpus petition as plaintiff's counsel. Thus, these claims cannot proceed under § 1983 because Dunkerley was not acting under color of state law. *Polk County*, 454 U.S. at 325, 102 S.Ct. at 453.

Moreover, plaintiff cannot maintain this § 1983 action against the State Attorney's Office or individual state attorneys for their alleged violation of extradition procedures.[1] Notwithstanding the applicability of Eleventh Amendment immunity, *see Farrell v. Woodham*, 2002 WL 32107645, at *3 (M.D. Fla. 2002), the public prosecutors responsible for plaintiff's extradition are entitled to prosecutorial immunity. The United States Supreme Court has held that public prosecutors are entitled to absolute immunity for their activities associated with prosecuting their cases, including initiating a prosecution and presenting the state's case, and are therefore not subject to suit under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976); *Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 504, 139 L.Ed.2d 471 (1997); *Long v. Satz*, 181 F.3d 1275, 1278-79 (11th Cir. 1999); *Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002) (prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 2615-16, 125 L.Ed.2d 209 (1993)). It is not an individual's status as a prosecutor that provides the immunity, but rather whether the defendant was

---

[1] Plaintiff seeks to hold the Santa Rosa County State's Attorney Office liable on the theory that it "is responsible for the extradition procedures," including failing to pursue an extradition hearing and governor's warrant. (Doc. 1, pp. 5-6).

performing "prosecutorial functions" at the time of the challenged acts, that dictates whether such a defendant is immune from suit. *Satz*, 181 F.3d at 1279; *Burns v. Reed,* 500 U.S. 478, 493, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).  Thus, the protection of absolute immunity is contingent on the "function" the prosecutors are performing and not their status as prosecutors.  In *Burns*, the Supreme Court clarified the scope of absolute immunity's protection when it found that activities not "intimately associated with the judicial phase of the criminal process" are not entitled to absolute immunity.  *Burns*, 500 U.S. at 493, 111 S.Ct. 1934 (quoting *Imbler v. Pachtman, supra*).

The decision to seek extradition falls within the range of discretionary duties performed by a prosecutor.  *See, e.g., Tungate v. Thoms*, 199 F.Supp. 2d 608, 623 (E.D. Ky.) (holding that state prosecutor was entitled to absolute prosecutorial immunity in § 1983 damages action for his role in extraditing plaintiff), *rev'd on other grounds*, 45 Fed. App. 502 (6th Cir. 2002); *Gagan v. Gately*, 673 F.Supp. 1029, 1030 (D. Colo. 1987) (holding that prosecuting attorney was absolutely immune from liability under § 1983 for actions in course of extradition process); *Cleary v. Andersen*, 423 F.Supp. 745, (D. Neb. 1976) (same).  Because plaintiff's allegations relate only to prosecutors' roles in extraditing him, which were actions taken in their prosecutorial function, the State Attorney's Office and those attorneys who participated in plaintiff's extradition are entitled to prosecutorial immunity from damages.

The only remaining defendant is Wendell Hall, Sheriff of Santa Rosa County.  Plaintiff seeks to hold Sheriff Hall liable on the theory that he "is responsible for the actions taken by the Santa Rosa County Sheriff's Office" in extraditing him.  (Doc. 1, p. 5).  The specific actions with which plaintiff takes issue are that they "didn't follow the guidelines" (doc. 1, p. 7) when they: (1) sought an extradition waiver from plaintiff after he had previously refused; (2) failed to promptly extradite him after he executed a waiver in October of 2006, and (3) later extradited plaintiff (pursuant to a new waiver) while criminal proceedings were pending in Mississippi.  Plaintiff does not identify what particular rights were violated by this conduct, or the source of those rights.

**Assuming, without deciding, that Sheriff Hall is the proper defendant for plaintiff to challenge the procedures used to extradite him, plaintiff has failed to state a colorable claim under § 1983.** Interstate extradition of fugitives is a matter of federal law, originating in article IV, § 2 of the United States Constitution, which states: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." U.S. Const. art. IV, § 2, cl. 2. The federal statute implementing the Extradition Clause is 18 U.S.C. § 3182, which provides:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

18 U.S.C. § 3182 (1969).

Individual states have been granted the right to enact their own extradition laws as long as these laws in no way impair federal extradition law. Some states, such as Mississippi, have exercised this legislative right and have passed individual extradition laws. *See* Miss. Code Ann. § 7-1-25 (1972, as amended). Other states, like Florida, have adopted the Uniform Criminal Extradition Act ("UCEA"). *See* Fla. Stat. Ann. §§ 941.01-941.30.

The acts of which plaintiff complains do not appear to violate any federal rights pertaining to extradition. The fact that Florida officials did not "complete" plaintiff's extradition in January of 2006 after he refused to waive extradition, or in

**October of 2006 after he waived extradition, suggests no violation of a right conferred by the Extradition Clause or § 3182.  Federal law does not <u>require</u> a demanding state to pursue extradition.  Further, neither the Constitution nor federal law precludes a demanding state from effecting a second waiver request at a later time.  As to plaintiff's complaint that he was extradited while charges were pending in Hinds County, Mississippi, he fails to identify which federal extradition right was implicated by such conduct.  The court has found none.  Neither the Constitution nor federal law prohibits extradition of persons imprisoned or awaiting trial in the asylum state.**

**Moreover, although the Eleventh Circuit has held that "a violation of state extradition law can serve as the basis of a section 1983 action where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States,"** *Harden v. Pataki,* **20 F.3d 1289, 1293 (11th Cir. 2003) (internal quotations marks and citations omitted), plaintiff in this case fails to identify a violation of state extradition law that implicated a right protected by the Constriction or federal extradition statute.  In fact, plaintiff's allegations fail to indicate that defendants' conduct even violated state extradition law.**  *See* **Miss. Code Ann. § 7-1-25(1) (2005);[2] Fla. Stat. Ann. §§ 941.01-941.30 (2005); Fla. Stat. §**

---

[2]**Mississippi's extradition statute states, in pertinent part:**

> It shall be the duty of the governor, on demand made by the executive authority of any other state, territory or district for any person charged, on affidavit or indictment in such other state, territory or district, with a criminal offense and who shall have fled from justice and be found in this state, the demand being accompanied with a copy of the affidavit or indictment certified as authentic by such executive authority, to cause the offender to be arrested and delivered up to the authority of such state, territory or district for removal to the jurisdiction having cognizance of the offense. . . .

**Miss. Code Ann. § 7-1-25(1) (2005).**

*Case No: 3:07cv268/MCR/MD*

941.05.[3]  Based on the foregoing, the undersigned concludes that plaintiff's claims relating to extradition should be dismissed for failure to state a § 1983 claim.

Plaintiff makes a vague reference to defendants' extradition procedures having "violated my 6th Amendment rights to a speedy trial," (doc. 1, p. 7); however, he does not expand on this claim or offer any information concerning his state criminal prosecution.  His allegations, as presented, fail to state a speedy trial claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1968-69, 1974, --- L.Ed.2d — (May 21, 2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).

Similarly, plaintiff's allegations fail to state an access-to-the-courts claim.  Plaintiff contends defendants restricted his access to the law library and to legal copies with regard to a state habeas corpus petition he filed without appointed counsel's involvement.  He asserts that such conduct is "a direct violation of my 5th & 14th Amendment rights to due process, I am entitled to prepare for my defense." (Doc. 1, p. 7, Continuation Page ¶ 6).

"[T]he fundamental constitutional right of access to the courts requires prison authorities to . . . provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977).  The Supreme Court, however, has clarified that prisoners' contentions of deprivations of access to courts must show actual

---

[3]This provision of Florida extradition law expressly provides for the extradition of persons imprisoned or awaiting trial in the asylum state:

> When it is desired to have returned to this state a person charged in this state with a crime, and such person is imprisoned or is held under criminal proceedings then pending against the person in another state, the Governor of this state may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or the person's term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this state as soon as the prosecution in this state is terminated.

Fla. Stat. Ann. § 941.05 (2005).

*Case No: 3:07cv268/MCR/MD*

injury as a "constitutional prerequisite." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *see also Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998); *Chandler v. Baird*, 926 F.2d 1057, 1062-63 (11th Cir. 1991). This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous legal claim regarding his sentence or conditions of confinement, such as a criminal appeal or post-conviction matter, or in a civil rights action seeking "to vindicate 'basic constitutional rights.'" *Lewis v. Casey*, 518 U.S. 355-57, 116 S.Ct. at 2181-82 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974));[4] *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). In other words, a plaintiff must articulate facts indicating some prejudice, such as "a denial or dismissal of a direct appeal, habeas petition, or civil rights case," *see Bass* v. *Singletary*, 143 F.3d at 1446, or "being unable to do timely research on a legal problem or being procedurally or substantially disadvantaged in the prosecution of the cause of action," *Chandler v. Baird*, 926 F.2d at 1063. It is insufficient to "merely allege a denial of access to a law library or adequate attorney." *Wilson v. Blankenship,* 163 F.3d at 1291. In the instant case, plaintiff has done just that. He has alleged no facts showing how his efforts to pursue state habeas relief were hindered by defendants' conduct. *See, e.g., Wilson v. Blankenship, supra*, (holding that pre-trial detainee failed to show actual legal injury regarding either his criminal conviction, because he was represented by counsel in that matter, or his civil rights litigation, because he appealed grant of summary judgment in that matter). Therefore, this claim should be dismissed for failure to state a claim.

Plaintiff's final contention is that he was subjected to cruel and unusual punishment based on the following: "The whole process has caused me emotional distress to the magnitude that I requested in March [2007] to see the phychiatrist [sic], I was told that I was on the list and as of this filing I haven't seen him." (Doc.

---

[4] In *Lewis*, examples of actual injury regarding prospective or existing litigation were missing filing deadlines or being prevented from presenting claims. *See Lewis*, 518 U.S. at 348, 116 S.Ct. at 2178.

1, p. 7, Continuation Page ¶ 7). To establish an Eighth Amendment claim, plaintiff must demonstrate: a substantial risk of serious harm, each defendant's deliberate indifference to that risk, and causation. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1985)(citing *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 56 (1994), and *LeMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)).

The first requirement, the objective component of Eighth Amendment analysis, requires:

> conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. v. Adams*, 221 F.3d 1254, 1257-58 (11th Cir. 2000)(citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981))), *cert. denied*, 121 S. Ct. 774, 148 L. Ed. 2d 673 (2001). In the context of denial of medical care, this first requirement has been more specifically described as encompassing two subsidiary requirements: an objectively serious need, and an objectively insufficient response to that need. *Taylor*, 221 F.3d at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)). A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)(quotation omitted).

The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor* at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300, 111 S. Ct. at 2325) ("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)). "To

Case 3:07-cv-00268-MCR-MD   Document 4   Filed 07/25/07   Page 13 of 14

Page 13 of 14

show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor* at 1258 (quoting *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291). Deliberate indifference is not established "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 114 S. Ct. at 1979. To sustain a claim, plaintiff must show that the challenged conduct was "very unreasonable in light of a known risk" of harm or suffering. *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995)(citing *Farmer*, 114 S. Ct. at 1978-79).

In the instant case, plaintiff's allegations fail to state an Eighth Amendment claim that is plausible on its face. His allegations do not remotely suggest that his need for mental health counseling was objectively serious and that by failing to immediately provide mental health counseling, Jail officials knew of, and disregarded, an excessive risk to plaintiff's health.

Accordingly, it is ORDERED:

Plaintiff's motion to proceed *in forma pauperis* (doc. 2) is GRANTED for the limited purpose of dismissing this action.

And it is respectfully RECOMMENDED:

That this cause be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) and (iii), and the clerk be directed to close the file.

At Pensacola, Florida, this 25th day of July, 2007.

/s/ *Miles Davis*
       MILES DAVIS
       UNITED STATES MAGISTRATE JUDGE

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:07cv268/MCR/MD*